UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:10-CV-100

VIRGA TRENT                                                                                                                               Plaintiff,

v.

FORD MOTOR COMPANY                                                                       Defendant.

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court upon Defendants' Motion for Summary Judgment. (Docket No. 34.) The Plaintiff has responded, (Docket No. 42), and the Defendant has replied, (Docket No. 46). This mater is now ripe for adjudication. For the reasons that follow, Defendants' Motion is GRANTED.

**BACKGROUND**

On May 29, 2009, Plaintiff Virga Trent was traveling northbound on U.S. Highway 45 when she suddenly lost control of her vehicle, a 1991 Crown Victoria manufactured by Ford Motor Company ("Ford" or "the Company"). The vehicle crossed the roadway's median and struck the guardrail on the opposite side. During the course of the accident, the driver's side airbag deployed and struck Trent's right eye, eventually resulting in permanently disabling injuries. Trent now brings a strict products liability action against Ford.[1] She alleges that her injuries resulted from Ford's negligent design of the airbag crash sensing system, which she argues deployed unnecessarily and was sold in a defective and unreasonably dangerous condition.

---

[1] Although Trent's original complaint also alleged negligence, her response to the instant motion indicates that she no longer intends to pursue this claim. (*See* Docket No. 42 at 2.)

1

At the heart of the dispute is whether the severity of Trent's accident necessitated the airbag's deployment. The airbag crash sensing system is intended to detect a deployment-worthy crash and cause the driver's side airbag to deploy accordingly. The 1991 Crown Victoria has five crash detection sensors: three "discriminating' sensors on the vehicle's forward left, forward center, and forward right sections, and two "safing" sensors, one located with the forward discriminating sensor and the other located in the passenger compartment. David Bauch, a Ford Motor Company crash and rollover specialist, explained that these sensors belong to the electrical circuit that deploys the airbag. Known as "ball and tube" sensors, they "close" when the deceleration force causes a ball to move down the tube, closing the electrical circuit. (Id.) The airbag deploys when one of the vehicle's two safing sensors and one of three discriminating sensors close at the same time, completing the electrical circuit. (The system's "overlap" requirement is designed to avoid accidental airbag deployments.[2]

Trent alleges that the airbag errantly deployed as a result of defective design, given that the accident was not severe. Her airbag crash sensing design expert, Chris Caruso, describes the crash as a "relatively minor" impact with the guardrail that did not require the airbag's deployment. (Docket No. 34-7 at 7.) Caruso opines that the sensing system was defectively designed or calibrated because it employed a dual sensor—that is, a safing sensor and a discriminating sensor—located in the vehicle's front crush zone. According to Caruso, Ford improperly packaged the two sensors together, causing the airbag to deploy needlessly. Caruso

---

[2] While Ford's argument that the crash sensing system was neither defective nor unreasonably dangerous is irrelevant to the instant motion, the Court notes briefly that the Company contends that the crash was sufficiently severe to cause the airbag to deploy as it was designed and that the system was neither defectively designed nor manufactured. Ford's airbag design expert, Jeffrey Pearson, opines that the vehicle's striking the embankment on the far side of the median likely caused the airbag deployment before it struck the guardrail. (Docket No. 26-1 at 9.)

2

concludes that this design defect caused the airbag's inadvertent deployment and Trent's resultant injury.[3]

According to Ford, Caruso admitted during his deposition that his assessments were based on incorrect assumptions and that the would-be defects he identified did not cause the airbag's deployment. The company further argues that Caruso conceded that the airbag crash sensing system had no manufacturing flaws or malfunctions. Ford now moves for summary judgment, contending that Trent cannot prove that the vehicle was defective and unreasonably dangerous or that any alleged defects caused the airbag's deployment.

**STANDARD**

Summary judgment is appropriate where the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party, and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (internal quotations omitted).

---

[3] Caruso's Rule 26 report also points to the system's "pulse stretcher" component as causing defect design, (Docket No. 34-7 at 6-7), and alleges that Ford failed to evaluate inadvertent deployment conditions, rendering it "unable to comprehend the potential for inadvertent deployments." (Docket No. 34-7 at 6.) However, as discussed *infra*, Trent has apparently abandoned these claims.

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). A "material" fact is one whose resolution affects the outcome of the lawsuit. *Lenning v. Commerical Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001). An issue is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Henson v. Nat'l Aeronautics & Space Admin.*, 14 F.3d 1143, 1148 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 248). Irrelevant or unnecessary factual disputes do not create genuine issues of material fact. *St. Francis Health Care Ctr. v. Shalala*, 205 F.3d 937, 943 (6th Cir. 2000). Moreover, no genuine issue of material fact exists when the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Accordingly, a factual dispute that "is merely colorable or is not significantly probative" will not defeat a properly supported motion for summary judgment." *Kraft v. United States*, 991 F.2d 292, 296 (6th Cir. 1993); *see also Int'l Union, v. BVR Liquidating, Inc.*, 190 F.3d 768, 772 (6th Cir. 1999).

The essential question is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The party moving for summary judgment has the initial burden of informing the court of the basis of its motion and identifying portions of the record that demonstrate the absence of a genuine dispute regarding material facts and must present a jury question as to each element of the claim. *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000); *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002). Failure to prove an essential element of a claim renders all other facts immaterial. *Elvis Presley Enterprises, Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 895 (6th Cir. 1991).

Once the moving party has satisfied this burden, the nonmoving party may not "rest upon its mere allegations or denials of the opposing party's pleadings," *Havensure, L.L.C. v. Prudential Ins. Co. of Am.*, 595 F.3d 312, 315 (6th Cir. 2010) (citation omitted), nor may it "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). Rather, the opponent of the motion must point to specific facts in affidavits, depositions, or other factual material demonstrating "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. If the nonmoving party cannot meet her burden of proof after sufficient opportunity for discovery, summary judgment is proper. *Celotex*, 477 U.S. at 322-23. It is against this standard that the Court reviews the relevant facts.

## DISCUSSION

### I. Strict liability for design defect

Kentucky law governs this diversity action. To impose liability upon a manufacturer for an allegedly defective product, Kentucky law requires a showing that the product is "in a defective condition unreasonably dangerous to the user or consumer." *Morales v. Am. Honda Motor Co.*, 151 F.3d 500, 506 (6th Cir. 1998) (quoting *Montgomery Elevator Co. v. McCullough*, 676 S.W.2d 776, 780 (Ky. 1984)). In matters of defective design, "the standard required is reasonable care." *Jones v. Hutchinson Mfg. Inc.*, 502 S.W.2d 66, 69-70 (Ky. 1973.) A product is considered "defective" when "it is made according to an unreasonably dangerous design." *Id.* at 69. The fact-finder must determine whether the product's design itself was a defective condition that was unreasonably dangerous to consumers. *Nichols v. Union Underwear Co., Inc.*, 602 S.W.2d 429, 434 (Ky. 1980).

"[P]roof of nothing more than that a particular injury would not have occurred had the product which caused the injury been designed differently is not sufficient to establish a breach of the manufacturer's or seller's duty as to the design of the product." *Jones*, 502 S.W.2d at 70. Rather, in order to establish a design defect, a plaintiff must prove the following:

> First, in establishing that the design in question was defective, the plaintiff must offer proof of an alternative safer design, practicable under the circumstances . . . . Second, the plaintiff must offer proof of what injuries, if any, would have resulted had the alternative, safer design been used. . . . Third, . . . the plaintiff must offer some method of establishing the extent of enhanced injuries attributable to the defective design.

*McCoy v. Gen. Motors Corp.*, 47 F. Supp. 2d 838, 839-40 (E.D. Ky. 1998) (quoting *Caiazzo v. Volkswagenwerk A.G.*, 647 F.2d 241, 250 (2d Cir. 1981).

Trent's action will fail at the summary judgment stage unless she sets forth sufficient evidence to satisfy each element of the prima facie case, or to at least create a genuine issue for trial. *See id.* at 840-41 (granting summary judgment for defendant where plaintiff filed to establish both an alternative design and causation); *Caudill v. Toyota Motor Corp.*, 2005 WL 3149311 (E.D. Ky. Nov. 23, 2005) (same). The Court need not search the entire record in search of a genuine issue for trial where such an issue is missing from the face of the parties' pleadings. *See In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

**II. Trent has submitted a feasible alternative design.**

In order to prove that her vehicle was "unreasonably dangerous" as designed, Trent must identify an alternative design that would have cured the alleged defect and averted her injury. *Cummins v. BIC USA, Inc.*, 835 F. Supp. 2d 322, 326 (W.D. Ky. 2011). She must show more than a conclusion that it was "theoretically probable that a different design would have been

6

feasible and would have prevented [the] injury." *Ingersoll-Rand Co. v. Rice*, 775 S.W.2d 924, 929 (Ky. App. 1988). Rather, she must provide expert testimony establishing "competent evidence of some practicable, feasible, safer, alternative design." *Gray v. Gen. Motors Corp.*, 133 F. Supp. 2d 540, 535 (E.D. Ky. 2001) (quoting *O'Byran v. Volkswagen of Am.*, 39 F.3d 1182, 1994 WL 599450, at *4 (6th Cir. 1994) (unpublished)). Satisfying this requirement, Caruso opined that Ford's dual sensor design is defective because the front center sensors should have been placed in two different locations rather than being co-located. He testified that General Motors utilized this alternative model during the same timeframe. (Docket No. 42-2 at 7-8.)

Ford alleges that Caruso failed to test this alternative design, rendering his testimony deficient. However, "an alternative design that has been widely used in another product can be presumed to have been tested." *Cummins ex rel. C.A.P. v. BIC USA, Inc.*, 2011 WL 1399768, at *6 (W.D. Ky. Apr. 13, 2011) (citing *Whitten v. Michelin Ams. Research & Dev. Corp.*, 2008 WL 2943391, at *7 (W.D. Tenn. July 25, 2008)). *See also MacCleery v. Royce Union Bicycle, Inc.*, 1996 WL 442707, at *4 (D.N.H. June 11, 1996) ("[A] design which is in current commercial use is presumptively effective and, as such, cannot be dismissed as an untested and novel theory simply because the expert did not also identify a testing procedure which validates the effectiveness."). Here, Caruso's proposed design was being used by at least one of Ford's competitors in 1991, and Ford itself abandoned the dual sensor design in the following year. (*See* Docket No. 42-3 at 14-15.) "It can, therefore, be assumed that the design is effective, tested, and safe." *Cummins*, 2011 WL 1399768, at *6 (quoting *Whitten*, 2008 WL 2943391, at *7). Therefore, Trent survives summary judgment as to this element, having identified an alternative design for the location of the safing and discriminating sensors.

### III. Trent has not come forth with the requisite expert testimony as to the product's defective and unreasonably dangerous nature.

Throughout his deposition, Caruso maintained that Ford's dual sensor design rendered the 1991 Crown Victoria defective and unreasonably dangerous.[4] Notwithstanding his criticism of the vehicle's design, however, he acknowledged that the airbag would have deployed regardless of whether the vehicle the dual sensor. Because Trent has not come forth with evidence that the alleged design defect caused her injury, her claim does not withstand summary judgment.

#### a. Caruso testified that the dual safing/discriminating sensor did not legally cause Trent's injuries.

Trent's design defect claim turns on specialized knowledge that "cannot be determined intelligently from testimony on the basis of ordinary knowledge gained in the ordinary affairs of life." *Templeton v. Wal-Mart Stores East, LP*, 2011 WL 4591937, at *3 (E.D. Ky. Sept. 30, 2011) (quoting *Commonwealth v. Robbins*, 421 S.W.2d 820, 824 (Ky. 1967)); *see also Thomas v. Manchester Tank & Equip. Corp.*, 2005 WL 3673118, at *1 (W.D. Ky. May 13, 2005) ("[E]xpert witnesses are generally necessary, indeed essential, in products liability cases . . . to prove such matters as a product defect and proximate causation, unless of course the nature of the defect and resultant injuries are so obvious as to fall within the general knowledge of the ordinary person." (citing William S. Haynes, *Kentucky Jurisprudence: Torts* § 21-28 (1987)). Therefore, Trent must rely upon expert testimony to establish both a breach of duty and causation.

Caruso's Rule 26 report explains his assessment of the front center safing/discriminating sensor design:

---

[4] *See*, *e.g.*, Caruso's deposition testimony at Docket No. 34-6 at 2-3 ("[M]y biggest concern of defect in this vehicle is the design of having an arming in the same package as a discriminating in the crush zone.")

8

> The frontal impact occupant restraint system for the 1991 Ford Crown Victoria utilizing a dual sensor front crush zone package was defective and unreasonably dangerous at the time of its design and manufacture as a result of a defect of the crash sensing system design and/or calibration which resulted in the inadvertent deployment [of] the driver frontal impact airbag in the subject collusion.

(Docket No. 34-7 at 12.) According to Caruso's report, the placement of the sensors could allow an impact at the vehicle's front to cause an airbag to unnecessarily deploy. (Docket No. 34-7 at 7; *see also* Docket No. 34-6 at 2-3.)

However, in his deposition, Caruso recognized that the safing sensor in the vehicle's passenger compartment would have closed during Trent's crash sequence. This closure, he concluded, would have the airbag's deployment regardless of the dual sensor in the frontal crush zone.[5] Accordingly, Caruso conceded that the safety's sensor's location adjacent to a discriminating sensor did not cause Trent's airbag to deploy; instead, the airbag would have deployed whether or not the vehicle had a forward dual sensor.

This concession strips Trent's design defect theory of the causation she must show. *See Holbrook v. Rose*, 458 S.W.2d at 157 (Ky. App. 1970) (explaining that the design defect theory requires the product to have legally caused the alleged harm). There is simply no proof that separating the sensors would have resulted in lesser or different injuries to Trent. Because Trent

---

[5] *See* Caruso's deposition testimony at Docket No. 46-1 at 11-12:

> Q: Going with your theory, you think more probably than not the passenger compartment safing sensor was closed?
>
> A: I would say yes. So I think in the end, although I'm critiquing the dual package just as a matter of bad design, I don't think in my theory it would have prevented a deployment, I think the discriminating sensor is ultimately the responsible defect here. I don't like a dual package in the crush zone, but because I believe it happened alter in the event after the bumper had stroked to some extent, I believe at that point it's likely the passenger compartment arming sensor was likely closed.

9

cannot meet the causation element of her design defect claim under Kentucky law, the Court must grant Ford's motion for summary judgment.

### b. The "pulse stretcher" design was not included in the 1991 Crown Victoria Design.

In addition, Caruso's Rule 26 report concluded that the vehicle's airbag sensing system was defective and unreasonably dangerous because of its "pulse stretcher" feature.[6] However, in his deposition, Caruso admitted that he formed this opinion erroneously. Upon learning that Ford's expert, David Bauch, testified that Trent's vehicle did not have the pulse stretcher (or "duel enhancer"), Caruso conceded this issue. (*See* Docket No. 34-6 at 5-6.) Furthermore, Trent's response to the instant motion for summary judgment did not address Ford's allegation that Caruso abandoned this theory. Accordingly, the above portion of Caruso's Rule 26 report is moot.

### c. Trent abandoned her manufacturing defect claim and concedes that Caruso abandoned his criticisms regarding the lack of testing.

Caruso's Rule 26 report criticized the vehicle's airbag sensing system based on an alleged lack of rough road and abuse testing in order to avoid accidental deployments. He subsequently abandoned this assumption based on Bauch's testimony. (*See* Docket No. 34-6 at 21-22.) In addition, Caruso conceded that the vehicle suffered no manufacturing defects.

---

[6] Caruso's Rule 26 report reads, in relevant part:

> The frontal impact occupant restraint system for the 1991 Ford Crown Victoria utilizing a discriminating crash sensor 'pulse stretcher' was defective and unreasonably dangerous at the time of its design and manufacture as a result of a defect of the crash sensing system design and/or calibration which resulted in the inadvertent deployment [of] the driver frontal impact airbag in the subject collision.

(Docket No. 34-7 at 12.)

Ford asserts that Trent has abandoned these claims, having failed to address them in their response to its summary judgment motion. The Court agrees: by failing to specifically respond to Ford's arguments as to these claims, Trent has abandoned them. *See Nat'l Info. & Comm. Equip. Network Inc. v. Willigan*, 2007 WL 2979928, at *8 (E.D. Ky. Oct. 11, 2007); *see also Larimore v. Grant*, 2006 WL 2037390, n.3 (W.D. Ky. July 17, 2006) (declaring claim abandoned where the plaintiff did not address the claim in brief opposing defendant's motion for summary judgment, but addressed other claims).

**ORDER**

Defendant Ford Motor Company having moved for summary judgment pursuant to Fed. R. Civ. P. 56, all parties having had the opportunity to present arguments, and the Court being sufficiently advised, IT IS HEREBY ORDERED that Ford's Motion for Summary Judgment, (Docket No. 34), is GRANTED. This matter is stricken from the Court's active docket, and all pending motions are dismissed as MOOT.